# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# Roanoke Division

**JOHN DAVIS MASSEY, JR.,**

    Plaintiff,

v.                                                                     Case No.:   7:21cv62

**VIRGINIA POLYTECHNIC INSTITUTE
AND STATE UNIVERSITY |
COMMONWEALTH OF VIRGINIA,**

**SERVE:**

**Timothy D. Sands**                                             **JURY TRIAL DEMANDED**
**Office of the President**
**Burruss Hall, Suite 210**
**800 Drillfield Drive**
**Blacksburg, VA  24061**

    Defendant.

## COMPLAINT

The above-named Plaintiff, John Davis Massey, Jr. ("Plaintiff" or "Mr. Massey"), by counsel, states as his Complaint against Defendant Virginia Polytechnic Institute and State University | Commonwealth of Virginia ("Virginia Tech") the following:

### I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this matter as it arises from the federal questions presented by the Family and Medical Leave Act, as codified under Title 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.  See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2. Due to its contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

3. The acts and/or omissions of Virginia Tech from which the following causes of action arise, occurred within Montgomery County, Virginia.

4. Venue is proper in this Court, as the acts and/or omissions substantially occurred within the Court's geographic area.

5. Venue is appropriate as the acts and/or omissions of Defendants from which these causes of action arise, occurred within Montgomery County and the Defendant maintains its headquarters within Montgomery County.

## II. THE PARTIES

6. Mr. Massey is a resident of the Town of Blacksburg, Virginia, and was employed by Virginia Tech at all times relevant to this Complaint.

7. Virginia Tech is a state university and, thus, a state agency, of the Commonwealth of Virginia. Virginia Tech's main campus, administration, Board of Visitors, officers, attorneys, and Director | President are all located in the Town of Blacksburg, Virginia.

## III. FACTUAL ALLEGATIONS

8. Mr. Massey began his employment with Virginia Tech on or around September of 2009.

9. Virginia Tech initially hired Mr. Massey as an Assistant Director of Professional Development. Virginia Tech's Office of Professional Development is a division of Virginia Tech Human Resources.

10. During the course of his employment with Virginia Tech, Mr. Massey received

annual positive work performance evaluations, merit raises, and general praise for his performance.  During his employment he was promoted and, at all times relevant to this Complaint, served Virginia Tech as Director of Professional Development.

11. Mr. Massey has a physical impairment that substantially limits major life activities on a long-term basis.  Specifically, Mr. Massey suffers with a painful double hernia that provides chronic pain and limits daily life activities.

12. Mr. Massey has established a record of this impairment with his employer, particularly towards the end of his employment.  At all times pertinent to this Complaint, Virginia Tech regarded Mr. Massey as having such an impairment.  At all times pertinent to this Complaint Virginia Tech regarded Mr. Massey as having a disability.

13. Mr. Massey is disabled and could perform the essential functions of his job with the occasional accommodation of medical leave as necessary.  It was this disability, or the perception of a disability, that led Virginia Tech to pursue the illegal abolishment of Mr. Massey's position.

14. In association with his employment, Mr. Massey received an annual salary and multiple benefits including insurance plans and retirement accounts.  In fact, Mr. Massey planned on remaining employment long term and, ultimately, retiring from his employment with Virginia Tech.

15. In April of 2019, Mr. Massey unfortunately required surgery for his disability/serious health condition.  Surgery was a consideration to alleviate some of the chronic symptoms of the double hernia.  Prior to his surgery, Mr. Massey communicated his diagnosis and need for surgery to his supervisor, Martin Daniels, Assistant Vice

President of Human Resources.

16. Several days prior to his surgical operation, Mr. Massey met with Vice President of Human Resources Bryan Garey and Mr. Massey again communicated his diagnosis, need for surgery, and discussed the time he would need off from work to recuperate. At no time did Mr. Garey or anyone else make any reference to FMLA leave nor did any one at Virginia Tech provide any information to Mr. Massey about how such leave could be obtained.

17. Mr. Massey required approximately ten (10) days of leave in April of 2019 to accommodate his surgery and recovery. This period of leave was an accommodation pursuant to the Rehabilitation Act.

18. Mr. Massey provided information to his supervisor related to the underlying medical issues and the requirement for surgery in an in-person meeting. Furthermore, Mr. Massey exchanged follow-up emails with his supervisor subsequent to the operation.

19. While on leave, Mr. Daniels continued to communicate with Mr. Massey regarding work-related obligations. The tone of Mr. Daniels' emails to Mr. Massey gave Mr. Massey concern about the permanence of his job. In fact, despite the fact that Mr. Massey's health care provider recommended four to six weeks of recovery time, Mr. Massey felt immense pressure to return to his job sooner than recommended. Mr. Massey felt he would be punished or terminated if he remained on leave.

20. At no time did Mr. Daniels or anyone else at Virginia Tech provide any information regarding protected FMLA leave. At no time did Mr. Daniels or anyone else at Virginia Tech further inquire about Mr. Massey's serious health condition in relation to the

possible use of FMLA leave.   Pursuant to 29 C.F.R. § 825.302(c), "[w]hen an employee seeks leave for the first time for an FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." (emphasis added). The "first time" here relates to the emergence of a new medical issue or serious health condition.  Moreover, "[i]n all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken."  Virginia Tech failed to follow these clearly established and statutory requirements.

21. In July of 2019, Mr. Massey received a letter from Mr. Daniels indicating that Mr. Massey's job had been "abolished" at Virginia Tech.  The letter informed Mr. Massey that his job would be abolished on October 31, 2019.  The letter specifically cited to Policy 7.6.6.  This letter has been appended to this pleading and made a part hereof as **EXHIBIT A**.

22. Pursuant to Policy 7.66, a financial hardship must exist for Virginia Tech to abolish a position.  As provided in the faculty handbook:

> 7.6.6 Abolition of Position
>
> Members of the administrative and professional faculty on regular appointments may be removed **in the event of financial hardship within a department that cannot be alleviated by ordinary budgeting practices, or upon reduction of the specific services for which they were employed**. A minimum of 90 calendar days' notice is given in such circumstances. If an A/P faculty member on a regular appointment is separated involuntarily due to budget reduction, reorganization, or workforce downsizing, the faculty member may be eligible for severance in accordance with Policy 4245, "Severance Benefits Policy for University Employees." (emphasis added).

23. No financial hardship existed within the Human Resources Department nor the Office of Professional Development. The "specific services" for which Mr. Massey was employed had not been reduced.  Either of these factors is a pre-requisite for Virginia Tech to abolish a position according to its own policies.  The absence of either prerequisite strongly supports the contention that the decision to "abolish" Mr. Massey's position was merely a pretext for discrimination/retaliation based upon his disability/serious health condition and related medical leave.

24. Moreover, at the time of receipt of the letter notifying Mr. Massey that his position had been "abolished", neither the Human Resources Department nor the Office of Professional Development experienced *any* sort of financial hardship, much less, one that could not be alleviated by "ordinary budgeting practices."

25. In fact, a large part of Mr. Massey's job duties regarded planning and executing seminars for staff and faculty to maintain various licenses and other considerations of professional development.  Mr. Massey accumulated a history of executing well-attended seminars that turned a profit.  Moreover, the demand for such activities is still very much present at Virginia Tech.

26. On October 31, 2019, Virginia Tech terminated Mr. Massey's employment.

27. To date, despite repeated requests, Virginia Tech has failed to identify which of the prerequisite events Virginia Tech experienced to justify the abolishment of Mr. Massey's position pursuant to policy 7.6.6.

28. On February 7, 2020, Mr. Massey, by counsel, transmitted a Virginia Freedom of Information Act request, pursuant to Virginia Code § 2.2-3700 *et seq.* This request has

been appended to this pleading and made a part hereof as **EXHIBIT B**.

29. Pursuant to this request, Mr. Massey requested:

> 1. All documents, whether existing in hard-copy or digitized, that support and/or reflect financial hardship within the University Organization and Professional Development Department created between January 1, 2019 through July 31, 2019.
>
> 2. All documents, whether existing in hard-copy or digitized, that illustrate the budget of the University Organization and Professional Development Department in 2019.
>
> 3. All documents, whether existing in hard-copy or digitized, that show the budget of the Human Resources Department in 2019.
>
> 4. All documents, whether existing in hard-copy or digitized, that support and/or reflect financial hardship within the Human Resources Department created between January 1, 2019 through July 31, 2019.
>
> 5. All documents, whether existing in hard-copy or digitized, created or modified by any employee of the University related to any assessment, study, and/or analysis of the Organization and Professional Development Department in 2018 and/or 2019.
>
> 6. All documents, whether existing in hard-copy or digitized, created or modified by any employee of the University related to a reorganization or restructure of staffing/personnel in the University Organization and Professional Development Department in 2018 and/or 2019.

30. Virginia Tech responded to this request pursuant to the Freedom of Information Act by providing documentation to counsel for Mr. Massey. These documents have been respectively titled, "Authorized Budget Document 2018-2019" and "Authorized Budget Document 2019-2020". These documents have been appended to this pleading and made

a part hereof as **EXHIBIT C**.

31. Two excel spread sheets were also provided by Virginia Tech included within **EXHIBIT C**. These spreadsheets clearly illustrate that: (1) professional development programming was consistently self-supporting, and in fact, earning revenue; and (2) employee participation rates remained consistently high across the four reported semesters illustrating a high demand and need for the specific services of Mr. Massey's position with Virginia Tech.

32. None of the documents produced by Virginia Tech illustrate any financial hardship within Mr. Massey's Department, nor do they illustrate any reduction in the need for the specific services provided by Mr. Massey.

33. In fact, review of the documents produced by Virginia Tech to justify the abolishment of Mr. Massey's position provides the following:

    a. In 2018-2019, Virginia Tech received a $4,100,000.00 increase in general funding from the prior year.

    b. In 2019-2020, Virginia Tech received a $36,900,000.00 increase in general funding from the prior year.

    c. The Human Resources Department received additional funding each respective year along with additional budgetary investments and/or one-time financial allocations that strengthened the Department's financial position in the 2019-2020 timeframe.

    d. From 2018 through 2020, Mr. Massey's Department was under no financial hardship and in fact, had only been strengthened by increased influx of

capital.

34. Prior to suffering the adverse employment action of his job being abolished, Mr. Massey consistently maintained excellent work performance and received only positive work performance evaluations while employed. The decision to abolish his position pursuant to Policy 7.6.6 is inconsistent with the criteria outlined in the policy and the specific circumstances within the HR department as alleged herein and, thus, was a pretext for unlawful discrimination.

35. In a discrimination case, a plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. *See, e.g., Westmoreland v. TWC Administration LLC*, 924 F.3d 718 (4th Cir. 2019). Like the plaintiff in *Westmoreland*, prior to suffering an actionable adverse employment action, Mr. Massey consistently maintained excellent work performance and received only positive work performance evaluations while employed. Additionally, like the plaintiff in *Westmoreland*, the decision to terminate Mr. Massey via policy 7.6.6 defied logic and could not be supported by available evidence.

## COUNT I: CLAIM FOR INTERFERENCE WITH FMLA RIGHTS

36. Mr. Massey incorporates herein by reference the preceding paragraphs of this Complaint.

37. Virginia Tech is: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day

9

during each of twenty (20) or more calendar work weeks in the current or preceding calendar year.

38. Virginia Tech interfered with Mr. Massey's use of FMLA leave by treating him differently, and less favorably, than similarly situated employees not exercising FMLA rights and failing to properly provide FMLA leave or the requisite notices/communications related to possible leave, thus impeding Mr. Massey's exercise of his FMLA rights, and ultimately resulting in Mr. Massey's termination.

39. Such interference would prohibit or create a chilling effect on Mr. Massey's ability to take FMLA certified leave in the future, either for himself or his family as provided in the FMLA.

40. Virginia Tech's interference prejudiced Mr. Massey in that he lost compensation and benefits, sustained other monetary losses, and suffered the loss of his employment as a direct result of Virginia Tech's violation.

41. As a direct and proximate result of Virginia Tech's actions, Mr. Massey has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

42. At all times material hereto, Virginia Tech engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Mr. Massey so as to support an award of liquidated damages.

43. The above-described acts by Virginia Tech and employees of Virginia Tech constitute unlawful interference with Mr. Massey's rights in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq.*

("FMLA").

## COUNT II:  CLAIM FOR DISCRIMINATION
## IN VIOLATION OF THE REHABILITATION ACT OF 1973

44. Mr. Massey incorporates by reference herein the preceding paragraphs of this Complaint.

45. At all times relevant to the Complaint, Mr. Massey was a qualified individual with a disability under the Rehabilitation Act.

46. At all times relevant to the Complaint, Mr. Massey could perform the essential functions of his job.

47. Prior to his termination, Mr. Massey revealed his disability and asked for reasonable accommodations.

48. Virginia Tech administered a plan in which Mr. Massey's employment would ultimately be terminated.

49. Virginia Tech would not have terminated Mr. Massey from employment, nor taken the other discriminatory actions against him but for Mr. Massey's disability and/or his request for reasonable accommodations and/or Virginia Tech's perception of Mr. Massey as disabled.

50. The reasons given for Mr. Massey's termination were pretextual in nature.

51. As a direct and proximate result of Virginia Tech's actions, Mr. Massey has suffered and will continue to suffer pecuniary loss, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

52. At all times material hereto, Virginia Tech engaged in unlawful or discriminatory

practices with malice or reckless indifference to the statutorily protected rights of Mr. Massey.

53. Virginia Tech has violated Mr. Massey's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, oppressively, maliciously, fraudulently, or with reckless disregard for Mr. Massey's rights, justifying an award of punitive damages against Virginia Tech in this action.

54. At all times material hereto, Virginia Tech treated Mr. Massey in a discriminatory manner in comparison with non-disabled employees.

55. At all times material hereto, Virginia Tech treated Mr. Massey in a discriminatory manner in comparison with similarly-situated employees.

56. The above-described acts by Virginia Tech and employees of Virginia Tech constitute disability discrimination in violation of the Rehabilitation Act.

## COUNT III: CLAIM FOR RETALIATION IN VIOLATION OF THE REHABILITATION ACT OF 1973

57. Mr. Massey incorporates by reference herein the preceding paragraphs of this Complaint.

58. At all times relevant to the Complaint, Mr. Massey was a qualified individual with a disability under the Rehabilitation Act.

59. Mr. Massey engaged in protected acts pursuant to the Rehabilitation Act while employed at Virginia Tech, including revealing his disabilities and requesting accommodations. Virginia Tech retaliated against him due to these protected activities.

60. But for Mr. Massey's engagement in activities protected by the Rehabilitation Act, Virginia Tech would not have retaliated against Mr. Massey.

61. Terminating Mr. Massey's employment resulted in unlawful retaliation on the part of Virginia Tech.

62. The above-described acts by Virginia Tech and employees of Virginia Tech constitute retaliation in violation of the Rehabilitation Act.

WHEREFORE, Plaintiff John Davis Massey, Jr. prays for judgment against Defendant Virginia Polytechnic Institute and State University | Commonwealth of Virginia, for back pay, front pay, compensatory damages, punitive damages, and liquidated damages together with prejudgment interest from the date of Mr. Massey's separation from employment, post judgment interest and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

JOHN DAVIS MASSEY, JR.

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB #65766)
STRELKA EMPLOYMENT LAW
119 Norfolk Avenue, S.W., Suite 330
Warehouse Row
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

brittany@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*